IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASJAH WARREN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-1155 |
| EUROPEAN WAX CENTER - PASADENA, | * | |
| | * | |
| Defendant. | | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on self-represented Plaintiff Asjah Warren's Motion for Default Judgment as to Defendant European Wax Center, Pasadena (ECF No. 13).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will deny the Motion.

## I. BACKGROUND

### A. Factual Background[2]

Self-represented Plaintiff Asjah Warren was employed as a Wax Specialist at the European Wax Center ("EWC") in Pasadena, Maryland, from approximately November

[1] Warren also seeks leave to amend her Complaint if the Court determines that the Complaint "does not sufficiently plead a legally cognizable basis for one or more claims, or that the statutory provisions identified by [Warren] do not properly correspond to the facts alleged." (Mot. Default J. ["Mot."] ¶¶ 90–92, ECF No. 13).

[2] In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the Complaint as to liability but declines to consider any additional facts alleged in the Motion for Default Judgment that were not included in the Complaint. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir. 2001).

18, 2023 until August 17, 2025. (Compl. at 2, ECF No. 1).[3] As a Wax Specialist, Warren "performed wax services and customer care duties for clients." (Id.). When she first began her employment with EWC, Warren was "scheduled to work approximately 32-34 hours per week." (Id.). At some point during her employment, Warren "requested a change to her schedule." (Id.). One month after Warren made this request, EWC "reduced [her] scheduled hours . . . to approximately 28 hours per week." (Id.). According to Warren, EWC justified this reduction in her scheduled work hours by stating that "business volume did not support the original schedule" of approximately 32–34 hours per week. (Id.).

On May 21, 2025, Warren received an email from the District Manager Tanisha Lacy, voicing various concerns with Warren's performance, including (1) "an ongoing concern with" Warren's "compliance around submitting" her "[Service Per Ticket ("SPT")] in the chat at the start of each shift,"[4] (2) concern regarding Warren's lack of "consistently bonusing with services," (3) her failure to progress from the "white level" to the "orange level" a year-and-a-half into her employment," (4) "ongoing timing issues," and (5) more generally, an "ongoing resistance to following core EWC processes."

---

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[4] Warren does not describe the Service Per Ticket ("SPT") metric in detail in either her Complaint or the attached exhibits. Based on the scant details in Exhibit B of her Complaint, the Court understands SPT to be a "payable metric" that employees must submit in a work chat at the start of each shift." (Performance Concern Email ["Email"] at 2, ECF No. 1-3). Submitting the SPT appears to be a "critical part" of employees' role at EWC because it "serves as confirmation that" the employee has "reviewed [their] books and identified Add-On opportunities for the day." (Id.). Similarly, it is unclear to the Court what the different color levels signify, beyond that they appear to indicate a correlation between length of employment and career progression.

(Performance Concern Email ["Email"] at 2, ECF No. 1-3; Decl. Asjah Warren ["Decl."] at 2, ECF No. 13-2). Lacy particularly emphasizes that despite Warren's stated commitment to increasing her SPT and "move up in color level," in her Quarterly Review, her "current SPT for 2025 is 1.42, which is well below expectations." (Email at 2).

Warren responded to Lacy's email on May 22, 2025, acknowledging that she had "fallen short in submitting [her] SPTs on time," providing context surrounding her non-compliance with the SPT requirement, (id. at 3), raising concerns about unequal treatment, public criticism, disciplinary actions, and a hostile work environment, and requesting equitable treatment, (see id. at 2–3; Mot. Default J. ["Mot."] ¶ 64, ECF No. 13). Specifically, Warren expressed concerns that she was "being singled out in front of the team," (Email at 3), that [she was] being treated differently than [her] peers," (id. at 4), and cited examples of allegedly differential treatment, such as receiving a write-up for an unexcused absence due to a scheduling mix-up when "other employees have had scheduling mix-ups without disciplinary actions," "getting locked out" and having her "room moved to the farthest corner" after she was "slightly late" for a shift when the same did not happen to other employees, and being subject to jokes by management about getting fired in front of guests, (id. at 3–4). Warren alleges that these experiences, "created a dynamic that felt not just stressful but hostile," (id.), because "workplace policies and expectations concerning scheduling, time-off requests, shift coverage, performance, and discipline were inconsistently communicated or enforced," (Mot. ¶ 43). Warren characterizes her email response to Lacy and other members of management as "protected

activity" and states that she "did not receive a meaningful response or resolution" from management regarding her concerns. (Compl. at 2).

Instead, Warren alleges that management began retaliating against her by (1) "further reduc[ing] [her] hours by approximately 5-9 additional hours per week," (2) "cut[ting] [her] shifts short and sen[ding] her home early while allowing other employees to work their full shifts," (3) "interfere[ing] with [her] client bookings by moving her scheduled clients to other employees," (4) subjecting her to "increased observation and monitoring that other employees did not experience," and (5) eventually suspending her. (Id.; Mot. ¶¶ 68–72). According to Warren, management's retaliatory conduct, including by reducing her hours and interfering with client bookings, "significantly impacted" her income "because her earnings depended on hourly pay, tips, and service commissions." (Compl. at 2; Mot. ¶¶ 69–72). Finally, "[t]he hostile work environment and retaliation became intolerable," "forc[ing] Warren to resign on or about August 17, 2025." (Compl. at 2).

## B. Procedural History

Warren filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 5, 2026, alleging "discrimination based on retaliation," "exclusion, a hostile working environment," "denial of promotion," and "constructive discharge." (EEOC Charge at 1–2, ECF No. 1-5). Warren received a Right to Sue letter from the EEOC on January 9, 2026. (Id. at 4). Warren then initiated the instant action by filing a Complaint against EWC on March 19, 2026, alleging retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended ("Title VII") (Count

I), hostile work environment under Title VII (Count II),[5] and constructive discharge (Count III).[6] (Compl. at 2–3). EWC did not file a timely response, so on May 29, 2026, Warren filed a Motion for Clerk's Entry of Default. (ECF No. 9). The Clerk issued an Order and Notice of Default on June 24, 2026. (ECF Nos. 10, 11). The Court then ordered Warren to file a motion for default judgment or show cause why such motion would be inappropriate. (ECF No. 12). Warren filed the instant Motion for Default Judgment on July 31, 2026. (ECF No. 13). To date, EWS has not responded.

---

[5] Warren also brings retaliation and hostile work environment claims under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, et seq. (Compl. at 1, ECF No. 1). MFEPA is the Maryland state analogue of Title VII, and federal courts apply Title VII caselaw in adjudicating MFEPA claims. Carey v. Balt. City Bd. of Sch. Comm'rs, No. GLR-22-2, 2022 WL 17254067, at *3 (D.Md. Nov. 28, 2022). Accordingly, the Court's analysis of Warren's Title VII claim shall constitute its analysis of her MFEPA claims. See id.

[6] It is unclear from the Complaint and the EEOC Charge whether Warren seeks to bring a standalone constructive discharge claim under Maryland common law, see Mulamba v. Bd. of Educ. of Balt. Cnty., No. 1656, 2024 WL 5103270, at *10–11 (App.Ct. Md. Dec. 13, 2024), cert. denied, 334 A.3d 832 (2025), and cert. denied, 146 S. Ct. 184, 223 (2025), or whether she is alleging constructive discharge as an adverse action to support her Title VII claims, see Marucci v. Greater Balt. Med. Ctr., Inc., No. ABA-23-510, 2025 WL 860137, at *9 (D.Md. Mar. 18, 2025). Specifically, in her EEOC Charge, Warren states, "I believe that I was subjected to retaliation with respect to a hostile working environment . . . and constructive discharge in violation of Title VII of the Civil Rights Act of 1964." (EEOC Charge at 1–2, ECF No. 1-5). This suggests that Warren is relying on constructive discharge to satisfy the adverse action element of her Title VII claims. Yet, portions of the Complaint alleging constructive discharge under Count III do not contain any reference to Title VII. (See Compl. at 3). This contrasts with the portion of the Complaint alleging retaliation under Count I, which explicitly notes that Warren is bringing her retaliation claim under Title VII. (Id. at 2). Notwithstanding this confusion, the Court will dismiss Warren's constructive discharge claim on other grounds, as explained below.

## II. DISCUSSION

### A. Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgment. Under Rule 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). According to Rule 55(b)(2), the court may enter a default judgment against the defendant if, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages. Fed.R.Civ.P. 55(b)(2). Crucially, "[a] defendant's default does not automatically entitle the plaintiff to the entry of a default judgment; rather, that decision is left to the discretion of the court." Endless Horizons, LLC v. Axim Fringe Sols. Grp., LLC, No. PX-25-197, 2026 WL 795612, at *2 (D.Md. Mar. 20, 2026) (quoting Joe Hand Promotions, Inc. v. Luz, LLC, No. DKC-18-3501, 2020 WL 374463, at *1 (D.Md. Jan. 23, 2020)).

In considering a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir. 2001). To determine whether the factual allegations in the complaint are well-pleaded, "[c]ourts in this district . . . have applied the standards articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009)." Endless Horizons, LLC, 2026 WL 795612, at *2 (collecting cases). Where a "[c]omplaint fails to state a claim against [the defendant]," the plaintiff's motion for default judgment "must be" denied, even if the defendant "has not responded to

the [c]omplaint." Abbasi v. Abbasi, No. PJM-10-3551, 2011 WL 6939328, at *2 (D.Md. Dec. 29, 2011), aff'd sub nom. Abbasi ex rel. Est.(s) of Abbasi v. Abbasi, 474 F.App'x 304 (4th Cir. 2012). Therefore, in this regard, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Balt. Line Handling v. Brophy, 771 F.Supp.2d 531, 544–45 (D.Md. 2011)). "Rather, the Court must decide whether the 'well-pleaded allegations in [the plaintiff's] complaint support the relief sought.'" Endless Horizons, LLC, 2026 WL 795612, at *2 (quoting Ryan, 253 F.3d at 780).

If the court finds that liability is established, then it must turn to the determination of damages. See Ryan, 253 F.3d at 780–81. The court must make an independent determination regarding damages and cannot accept as true factual allegation of damages. See Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co., 919 F.Supp.2d 680, 688 (D.Md. 2013).

Finally, the Court also recognizes its obligation to liberally construe the pleadings of self-represented litigants such as Warren. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). "Liberal construction does not mean, however, that the Court can ignore a clear failure in the pleading to allege a cognizable claim." Bell v. Frosh, No. GLR-20-2920, 2020 WL 6263186, at *1–2 (D.Md. Oct. 22, 2020) (citing Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990)).

## B. Analysis

### 1. Liability

Warren has failed to state a claim for either hostile work environment or retaliation under Title VII and MFEPA. Because Warren cannot establish liability as to EWC, she is not entitled to default judgment.[7]

Title VII prohibits employers from discriminating against employees based on race, sex, color, religion, or national origin. 42 U.S.C. § 2000e-2(a). To successfully state a claim for hostile work environment, a plaintiff must allege that (1) she experienced unwelcome harassment; (2) based on a characteristic protected under Title VII; (3) the harassment was severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. West v. Mayorkas, No. JKB-23-1661, 2024 WL 3878375, at *8 (D.Md. Aug. 20, 2024).

Title VII also contains an anti-retaliation provision that "makes it unlawful for an employer to discriminate against an employee because the employee has protested" or otherwise opposed unlawful workplace discrimination. Harris v. Md. House of Correction, 209 F.Supp.2d 565, 570 (D.Md. 2002) (citing 42 U.S.C. § 2000e-3(a)). To successfully state a claim for retaliation, a plaintiff may either "offer 'sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting framework.'" Holloway v. Maryland, No. RDB-20-377, 2024 WL 1075414, at *10 (D.Md. Mar. 12, 2024) (citing

[7] All of Warren's allegations as to liability are deemed admitted because EWC was served with the Complaint but has not responded. See Castillo v. D & P Pro. Servs., Inc., No. DKC-14-1992, 2015 WL 4068531, at *3 (D.Md. July 2, 2015).

Smith v. CSRA, 12 F.4th 396, 416 (4th Cir. 2021)). If the plaintiff chooses to proceed under the burden-shifting framework, she must allege that (1) she engaged in activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. See Noonan v. Consol. Shoe Co., Inc., 84 F.4th 566, 574 (4th Cir. 2023).

To constitute protected activity for the purposes of a Title VII retaliation claim, the employee's "complaints must . . . communicate 'a belief that the [defendant] has engaged in . . . a form of . . . discrimination' based on a" characteristic protected by Title VII, such as race, sex, color, religion, or national origin. Chang Lim v. Azar, 310 F.Supp.3d 588, 604 (D.Md. 2018) (quoting Crawford v. Metrop. Gov't of Nash. & Davidson Cnty., 555 U.S. 271, 276 (2009)). Indeed, "[g]eneral complaints of unfair treatment" do not constitute protected activity when such complains do not implicate the plaintiff's membership in a protected class. See Holloway, 2024 WL 1075414, at *10 (citing Romeo v. APS Healthcare Bethesda, Inc., 876 F.Supp.2d 577, 587 (D.Md. 2012)); Chang Lim, 310 F.Supp.3d at 604 ("Complaints about management activities that would not constitute unlawful discrimination do not count as protected activity." (emphasis added)).

Crucially, Title VII only makes unlawful workplace discrimination based on one or more of the above-mentioned protected characteristics; general allegations of unequal treatment or mistreatment in the workplace that are not based on one of the above-mentioned protected traits fall outside Title VII's purview. See, e.g., Holloway, 2024 WL 1075414, at *10. Therefore, plaintiffs bringing any claim under Title VII—including hostile work environment and retaliation—must allege that they suffered harassment or

retaliation because of their race, sex, color, religion, or national origin. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (explaining that a Title VII hostile work environment claim must be based on alleged harassment that occurred because of a characteristic protected under Title VII); Coleman, 626 F.3d at 190 (explaining that a Title VII retaliation claim must plead that the adverse action occurred because the plaintiff protested or opposed activity made unlawful by Title VII).

As to her hostile work environment claim, Warren's EEOC Charge, Complaint, and supporting documentation are entirely devoid of any facts from which this Court may infer that EWC subjected her to a hostile work environment or otherwise mistreated her because of a trait protected under Title VII, i.e., her race, sex, color, religion, or national origin. In fact, there is no reference whatsoever to any of the traits protected by Title VII in Warren's filings in this Court. Therefore, the Court finds that Warren has failed to establish liability as to her hostile work environment claim (Count II).

Warren's retaliation claim falls victim to the same pleading deficiency. Although Warren characterizes her May 22, 2025 email to management "raising concerns about unequal treatment, public criticism, disciplinary actions, and a hostile work environment" as protected activity that prompted retaliation, (Compl. at 2–3), such an email to management complaining only generally about unfair or unequal treatment does not constitute protected activity because it does not implicate Warren's membership in a protected class or communicate to management that Warren was protesting or opposing workplace discrimination based on her race, sex, color, religion, or national origin, see Holloway, 2024 WL 1075414, at *10 (citing Romeo, 876 F.Supp.2d at 587); Chang Lim,

310 F.Supp.3d at 604. As with her hostile work environment claim, here too, Warren's EEOC Charge, Complaint, and attached exhibits do not contain even a single reference to any traits protected by Title VII.[8] Absent facts showing that EWC retaliated against Warren after she complained about experiencing unlawful workplace discrimination based on a trait protected by Title VII, Warren cannot establish liability as to retaliation (Count I).[9]

**2. Leave to Amend**

Warren requests leave to amend her Complaint if the Court determines that the Complaint "does not sufficiently plead a legally cognizable basis for one or more claims, or that the statutory provisions identified by [Warren] do not properly correspond to the facts alleged." (Mot. ¶¶ 90–92). The Court will deny Warren leave to amend her Complaint for two reasons.

First, Warren has not complied with local rules 103.6(a) and (c) which require plaintiffs seeking leave to amend a complaint to submit a copy of their proposed

[8] Warren's MFEPA claims warrant dismissal for the same reasons as her Title VII claims. MFEPA contains a broader category of protected traits than Title VII, including not only race, color, religion, sex, and national origin but also age, marital status, sexual orientation, gender identity, genetic information, military status, and disability. See Md. Code, State Gov't § 20-606(a)(1)(i). Warren does not allege that EWC harassed her, discriminated against her, or retaliated against her based on any of the additional traits protected by MFEPA. Therefore, the Court will dismiss Warren's MFEPA hostile work environment and retaliation claims as well.

[9] "When, as here, the federal claim is dismissed early in the case, federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-727 (1966)). Accordingly, to the extent Warren brings her constructive discharge claim in Count III under Maryland common law, she cannot establish liability. Alternatively, if Warren's constructive discharge claim is a part of her Title VII claims, it cannot stand for the reasons stated above. Therefore, the Court will dismiss Warren's constructive discharge claim (Count III).

amendment and a red-lined comparison to the initial complaint. See Local Rules 103.6(a), (c) (D.Md. 2025); Erbe v. Campbell, No. GLR-20-3266, 2021 WL 1890610, at *6 (D.Md. May 11, 2021) (denying leave to amend where plaintiff failed to submit a copy of the proposed amendment and a red-lined comparison to the initial complaint and did not put forth justifications for the amendment).

Second, even excusing Warren's noncompliance with the local rules due to her self-represented status, any amendment that Warren could submit based on her existing EEOC Charge would be futile. Although a "court should freely give leave [to amend] when justice so requires," Fed.R.Civ.P. 15(a)(2), "justice does not require permitting leave to amend when amendment would . . . be futile," U.S. Equal Emp. Opportunity Comm'n v. Koerner Mgmt. Grp., Inc., No. GLR-21-652, 2021 WL 4255374 at *1 (D.Md. Sep. 17, 2021). Leave to amend is futile "when an amended complaint could not survive a motion to dismiss for failure to state a claim." Id. (citing U.S. ex rel. Wilson v. Kellog Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)).

Any amended complaint that Warren could file based on her existing EEOC Charge—which "operate[s] to limit the scope of any subsequent judicial complaint"—would not survive a motion to dismiss for failure to state a claim because, as explained above, her EEOC Charge does not allege discrimination or retaliation based on any traits protected by Title VII, and Warren cannot include factual allegations in an amended complaint that are not included in her EEOC Charge. Marrero v. Verizon Md. LLC, No. MJM-24-3311, 2026 WL 2469219, at *5 (D.Md. Aug. 24, 2026); Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) ("[F]actual allegations made in formal litigation must

correspond with those set forth in the administrative charge.”). As such, an amended complaint based on the existing EEOC Charge would fail as a matter of law for failure to allege membership in a protected class under Title VII. Therefore, the Court will deny Warren’s request for leave to amend her Complaint.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Warren’s Motion for Default Judgment (ECF No. 13). A separate Order follows.

Entered this 12th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge